UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8          UNITED STATES  DISTRICT COURT
9            Northern District of California
10              San Francisco Division
11

12   TADEUSZ WYRZYKOWSKI,                          No. 3:14-cv-03825-LB

13                      Plaintiff,                 **ORDER GRANTING THE**
                                                   **DEFENDANTS' MOTION TO**
14          v.                                     **DISMISS THE PLAINTIFF'S**
                                                   **SECOND AMENDED COMPLAINT**
15   COUNTY OF MARIN, et al.,
                                                   [Re: ECF No. 45]
16                      Defendants.

17   _____/

18                          **INTRODUCTION**

19       Plaintiff Tadeusz Wyrzykowski, who is proceeding *pro se*, sued ten defendants in his Second

20   Amended Complaint: (1) the County of Marin; (2) the County of Marin Board of Supervisors; (3)

21   County Supervisors; (4) former District 1 Supervisor Susan Adams; (5) current District 5 Supervisor

22   Judy Arnold; (6) current District 4 Supervisor Steven Kinsey; (7) current District 2 Supervisor Katie

23   Rice; (8) current District 3 Supervisor Kathrin Sears; (9) Roy Given; and (10) Liz Clark. (Second

24   Amended Complaint, ECF No. 44.[1]) The court previously dismissed the County Supervisors because

25   it is duplicative of the County of Marin Board of Supervisors; nine defendants remain. (5/12/2015

26

27   _____

28       [1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations
     are to the ECF-generated page numbers at the tops of the documents.

1  Order, ECF No. 52 at 2.) The gist of his allegations is that the defendants improperly seek taxes

2  from him with respect to a property he owns. The defendants move to dismiss his Second Amended

3  Complaint. (Motion to Dismiss, ECF No. 45.) Pursuant to Civil Local Rule 7-1(b), the court finds

4  this matter suitable for determination without oral argument. (6/4/2015 Clerk's Notice, ECF No. 65.)

5  Upon consideration of the papers submitted and the applicable legal authority, the court grants the

6  defendants' motion.

7  **STATEMENT**

8  **I. PLAINTIFF'S ALLEGATIONS**

9      The complaint's allegations contain the following. The plaintiff is the owner of several

10  properties; he labeled four as "Property #01," "Property #06," "Property #21," and "Property #28."

11  (*See* Second Amended Complaint ¶¶ 24-25, 34, 53.) The claims in this action, however, are in

12  relation to Property #01. (*See id.* ¶¶ 24-25, 36.) At a high level, he alleges that the defendants

13  improperly labeled the properties as "delinquent" at various times since 2002 even though he paid

14  the taxes owed on them, deprived him of due process of law and equal protection under the law,

15  violated his civil rights, engaged in racketeering and fraud, and intentionally inflicted emotional

16  distress. (*See generally id.*)

17      The plaintiff alleges that the defendants' unlawful conduct began on April 1, 2002, "upon [his]

18  asking the tax office clerk[, who was] under [defendant Roy] Given's direct supervision, to[] please

19  check some facts/figures re[:] town folks' properties." (*Id.* ¶ 30.)  He believed that "the taxman was

20  auctioning on false 'delinquency,' rendering people homeless." (*Id.*) Defendants then "discriminated

21  [against], insulted, labeled for retaliation . . . for daring to, asking in the name of the greater public

22  good. . . ." (*Id.* ¶ 31 (ellipses in original).) Four days later, on April 4, 2002, the "county clerks [in]

23  room 202, under [Mr.] Given's direct supervision[,] embezzled [the plaintiff's] tax payments." (*Id.* ¶

24  32.) "A month later[, the] room 202 clerks . . . under [Mr.] Given's orders, demanded money for"

25  Property #28. (*Id.*) The plaintiff "informed [them and] sent proof that [he] just paid tax on" Property

26  #28. (*Id.*) Soon thereafter, Property #28 "was fraudulently labeled 'delinquent' and set up for

27  auction." (*Id.* ¶ 33.)

28      From 2004 to 2007, as a part of "[Mr.] Given's RICO Racket scam, they stole more payments

on" Property #06, Property #21, and Property #28. (*Id.* ¶ 34; *see also id.* ¶¶ 34-38, 48.) The plaintiff alleges that multiple persons in the County Clerk's office "admitted" that he made the payments but they had not been "applied" or "posted" to his accounts correctly. (*Id.* ¶¶ 35, 38.) The plaintiff also alleged that on June 22, 2007, "[Mr.] Given conned [non-party Michael] Smith and [defendant Liz] Clark to help him induce me [i]nto a 'contract.'" (*Id.* ¶¶ 40; *see also id.* ¶ 6(h).) Pursuant to this contract, the plaintiff was forced "to pay again on a paid bill." (*Id.* ¶ 60.) Mr. Given also "shook [the plaintiff] down [for his] $179 pocket cash [and] with it as he fraudulently fooled/robbed the County treasury." (*Id.* ¶¶ 40; *see also id.* ¶¶ 46-47.) On July 10, 2007, the plaintiff "asked the [B]oard of Supervisors fo[r] help, [but] they sheltered[ and] accomplished the abusers." (*Id.* ¶ 60.) Then, in August 2007, Mr. Given "duped the County Recorder, Richard Arrow[, when Mr. Given] laundered [his] stolen funds through the County treasury, using willing, [and] duped into perjury[,] co-actress [Ms.] Clark." (*Id.* ¶ 42; *see also id.* ¶ 49.)

Over three years after that, on December 20, 2010, non-party Michael Smith and defendant Mr. Given "assaulted [the plaintiff] for filing [an] Adm. Claim against their violations." (*Id.* ¶ 60.) Three days later, on December 23, 2010, the plaintiff "sought help from the Supes[, but i]nstead [of getting] help, [he] got battered, at the Board chamber." (*Id.*)

In 2010, Property #01 comes into the picture. On April 12, 2010, the plaintiff "timely paid tax $2984[.]51 on [P]rop[erty] #01 (and on other props.)." (*Id.* ¶ 62.) On December 10, 2010, he "timely paid tax $1650[.]14 on [P]rop[erty] #01 (and on other props.)." (*Id.*) And on April 8, 2011, he "timely paid tax $2451[.]35 on [P]rop[erty] #01 (and on other props.)." (*Id.*) But defendants Mr. Given and Ms. Clark and others "maliciously ma[d]e sure [that the plaintiff's] misery d[id] not end." (*Id.* ¶ 63.) "[D]espite taxes timely PAID, they fraudulently label[ed] [P]rop[erty] #1 'delinquent,' [and] as before, with [P]rop[erty] #28, they point[ed] it to [] auction." (*Id.*; *see also id.* ¶ 6(e).)

From 2011 to 2013, the defendants "repeatedly demand[ed] payments, penalties, interests, [and] fees]" on Property #01. (*Id.* ¶ 65.) In the spring 2011, "while in Nevada [the plaintiff] was threatened by" Mr. Given and Ms. Clark "with dire repercussions if [he did] not pay more money on the fraudulent 'contract.'" (*Id.* ¶ 54.) "They pursued [the plaintiff] through [the] US Mail, through Fax, [and t]hrough Phone." (*Id.* ¶ 55.) The plaintiff "objected," as he "wanted to pay only due and

UNITED STATES DISTRICT COURT
For the Northern District of California

true taxes," but he "did NOT get ANY answer." (*Id.* ¶¶ 54, 56.) "Cornered, threatened by [Mr.] Given, [Ms.] Clark[, and the] abuse of power, [the plaintiff] sent money orders to Marin County." (*Id.* ¶ 56.)

Later, on August 14, 2013, "under more threats of further punishment, [the plaintiff] sent by Mail, to [defendant Mr.] Given [an] undue/untrue demanded, fraudulent payment on a bill [for Property] #01 that [had] already been paid." (*Id.* ¶ 13; *see also id.* ¶ 71.) Later, in the fall of 2013, "under more threats and further punishment, [the plaintiff] sent to [defendant Mr.] Given the undue, fraudulently demanded [payment] on a bill [for Property #01] that ha[d] already [been] PAID on" August 14, 2013. (*Id.* ¶ 19.) The plaintiff "went to the County Board of Supervisors chamber[s] to complain again. NO ONE would hear [him], again." (*Id.* ¶ 20.) Instead, the secretary or clerk gave him a complaint form. (*Id.*)

On February 12, 2014, the plaintiff filed a government administrative claim, but "[t]he stone-walled County/Counsel emblematically set a trap" and "fraudulently, deceitfully showed no interest in [it], nor its content, charges, format, in-sufficiency, et al." and instead "awaited a suit, which they can trash on [and] claim 'insufficiency.'" (*Id.* ¶ 14; *see also id.* ¶¶ 21, 72-73.) On the claim form, when asked to provide the "date of injury, damage or loss," the plaintiff wrote that the injury occurred on September 3, 2013 and is continuing. (Request for Judicial Notice ("RJN"), Ex. B, ECF No. 20.[2]) When asked to provide a "general description of injury, damage or loss and circumstance

---

[2] The defendants previously asked the court to take judicial notice of the following documents: (1) the plaintiff's August 22, 2014 application to proceed *in forma pauperis* in this case; (2) the claim form that the plaintiff submitted to the County of Marin on February 12, 2014; (3) the claim form that the plaintiff submitted to the County of Marin on November 30, 2010; (4) a "Notice of Return of Claim without Action/Rejection of Claim" form dated February 24, 2014; (5) the complaint that the plaintiff filed in the United States District Court for the Northern District of California on June 30, 2011 in *Wyrzykowski v. County of Marin, et al.*, No. C 11-03239 SI; (6) the District Court's January 8, 2012 order dismissing the plaintiff's action in *Wyrzykowski v. County of Marin, et al.*, No. C 11-03239 SI; (7) the Ninth Circuit Court of Appeal's March 12, 2012 order dismissing the plaintiff's appeal of the District Court's January 8, 2012 order; (8) the United States Supreme Court's October 7, 2013 notice that the plaintiff's petition for writ of certiorari is denied; (9) the third amended complaint that the plaintiff filed in Marin County Superior Court on October 9, 2012 in *Wyrzykowski v. County of Marin, et al.*, No. CIV-110-3274; (10) the Marin County Superior Court's July 11, 2014 order on the defendants' motion for judgment on the pleadings; (11)

1    which gave rise to the claim," the plaintiff wrote: "ethnic discrim., retaliatory discrim., equal

2    protection, oppression, deprivation of rights – color of law, abuse of power, embezzlement, extortion

3    of public property – tax funds, mail/wire fraud, RICO, systemic public corruption, malfeasance,

4    negligent supervision, culture – customs, forger of documents, consortium, IIED, threats to life et

5    al." (*Id.*) When asked why the County of Marin is responsible for the alleged injury, damage or loss,

6    the plaintiff wrote: "The Board–County is allowing, permitting, sheltering, abetting, accompliceing

7    fraud, extortion, corruption, et al. Roy Given is County Tax Collector, Treasurer, Finance Dir.,

8    Public Administrator." (*Id.*) And when asked the name or names of the County of Marin employee

9    or employees who caused the alleged injury, damage or loss, the plaintiff wrote, "Roy Given." (*Id.*)

10   The plaintiff did not provide any factual allegations on the claim form. (*See id.*)

11       On February 22, 2014, the Office of the County Counsel rejected the plaintiff's claim. (Second

12   Amended Complaint ¶¶ 14, 21, 73; RJN, Ex. D, ECF No. 20.)

13   **II.  PLAINTIFF'S PRIOR ACTIONS**

14       According to the documents submitted by the defendants for judicial notice, the plaintiff filed

15   prior actions regarding the taxes owed on his properties since 2002.

16       On June 30, 2011, the plaintiff filed a complaint in this district against the County of Marin,

17   Michael Smith, Mr. Given, and Ms. Clark in which he made allegations nearly identical to those

18   made here. (RJN, Ex. E, ECF No. 20.) That action primarily concerned his failure to file property

19   taxes on Property #28. (*See id.* at ¶ 56, ECF No. 20-2 at 22.) Judge Illston dismissed his action

20   without prejudice and without leave to amend on January 8, 2012. (RJN, Ex. F, ECF No. 20.) The

21

22   the petition for a writ of mandate that the plaintiff filed with the California Court of Appeal on
     August 28, 2014; (12) the California Court of Appeal's September 5, 2014 and December 10, 2014

23   orders denying the plaintiff's petition for a writ of mandate; (13) the Marin County Superior Court's
     notice that trial will begin on January 9, 2015; (14) plaintiff Keiki Fujita's July 8, 2014 application

24   to proceed *in forma pauperis* in *Fujita v. County of Marin Board of Supervisors, et al.*, No. C14-
     03093 NC; and (15) Keiki Fujita's October 10, 2014 notice of voluntary dismissal in *Fujita v.*

25   *County of Marin Board of Supervisors, et al.*, No. C14-03093 NC; and (16) the Marin County

26   Superior Court's January 30, 2015 order granting judgment in favor of the defendants in

27   *Wyrzykowski v. County of Marin, et al.*, No. CIV-110-3274. (*See* RJN, Exs. A-O, ECF No. 20;
     Second RJN, ECF No. 39, Ex. P, ECF No. 39.) The court did so. (3/23/2015 Order, ECF No. 43 at 3

28   n.3.)

1   plaintiff unsuccessfully appealed to the Ninth Circuit and the U.S. Supreme Court. (RJN, Exs. G, H,
2   ECF No. 20.)

3       Also on June 30, 2011, the plaintiff filed a complaint in Marin County Superior Court (the
4   "Superior Court Action") against the County of Marin, the Board of Supervisors, Michael Smith,
5   Mr. Given, Ms. Clark, Susan Adams, Judy Arnold, Steve Kinsey, Sandy Laird, Chris Sciocchetti,
6   Katherine Haley, and Dolores Reinhardt. That action, too, primarily concerned his failure to file
7   property taxes on Property #28. (*See* RJN, Ex. I, ECF No. 20.) He brought the following 32 claims:
8   (1) assault; (2) battery; (3) intentional infliction of emotional distress; (4) free speech retaliation; (5)
9   ethnic discrimination; (6) violation of his right to association; (7) unconstitutional policy, customs,
10  and procedures; (8) violation of his personal rights; (9) retaliatory discrimination; (10) conspiracy
11  against rights; (11) deprivation of rights under color of law; (12) abuse of power; (13) honest
12  services; (14) fraudulent contract; (15) mail and wire fraud; (16) civil RICO; (17) [none]; (18) fraud;
13  (19) perjury; (20) systematic public corruption; (21) malfeasance in office; (22) official misconduct;
14  (23) negligent supervision; (24) unconstitutional taking; (25) forgery of documents; (26) extortion
15  and embezzlement of funds; (27) violation of the revenue and taxation code; (28) fraudulent
16  concealment; (29) violation of due process; (30) defamation, libel, and slander; (31) violation of
17  equal protection; (32) oppression; and (33) threats and threats to life.[3] (*See id.*)

18      The defendants thereafter moved for judgment on the pleadings as to all of the plaintiff's claims
19  except for his 4th and 31st claims. (*See* RJN, Ex. J, ECF No. 20.) On July 11, 2014, the Marin
20  County Superior Court granted the defendants' motion, dismissed without prejudice the plaintiff's
21  14th claim, and dismissed with prejudice the rest. (*Id.*) The plaintiff did not re-allege his 14th claim.
22  (*See* Second RJN, Ex. P, ECF No. 39.)

23      On January 9, 2015, the case proceeded to a bench trial on the plaintiff's 4th claim (free speech
24  retaliation) and 31st claim (violation of equal protection). (*See* RJN, Ex. M, ECF No. 20; Second
25  RJN, Ex. P, ECF No. 39.) The plaintiff made an opening statement, but declined to call witnesses,

---

27     [3] The plaintiff brought only 32 claims, but he numbered them as claims 1 through 33. As the
28  court noted above, he failed to bring a 17th claim. The court keeps the plaintiff's numbering, though, because the Marin County Superior Court referred to his claims by his numbers.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   introduce any evidence, or make further statements to the court. (*See* Second RJN, Ex. P, ECF No.

2   39.) At the close of the plaintiff's case in chief, the defendants moved for judgment under California

3   Code of Civil Procedure 631.8 on the basis that the plaintiff had failed to establish any evidence to

4   support his claims. (*See id.*) In light of the plaintiff's decision not to introduce evidence, on January

5   30, 2015, the court found that the plaintiff had not established the required elements of his claims

6   and granted the defendants' motion and entered judgment in their favor. (*Id.*)

7   **III. PROCEDURAL HISTORY**

8       The plaintiff filed his original Complaint in this action on August 22, 2014. (Complaint, ECF

9   No. 1.) After dismissing the plaintiff's subsequently filed First Amended Complaint upon the

10  defendants' motion, the plaintiff filed the operative Second Amended Complaint. (Second Amended

11  Complaint, ECF No. 44.) In it, the plaintiff brings the following eleven claims: (1) violation of his

12  Fourteenth Amendment procedural due process rights (against all defendants except the County of

13  Marin); (2) violation of his Fourteenth Amendment right to equal protection under the law (against

14  the County of Marin and the Board of Supervisors); (3) municipal liability under *Monell v. Dep't of*

15  *Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and *City of Canton, Ohio v. Harris*, 489 U.S.

16  378 (1989) (against the County of Marin and the Board of Supervisors); (4) supervisory liability

17  under *Monell* (against Ms. Adams, Arnold, Kinsey, Rice, and Sears and Mr. Given); (5) violation of

18  California's Bane Act, Cal. Civ. Code § 52.1 (against all defendants except the County of Marin);

19  (6) "theft of honest services, abuse of power, and color of law" (against all defendants except the

20  County of Marin); (7) fraud (against all defendants); (8) violation of the Racketeer Influenced and

21  Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, based on predicate crimes of mail and wire

22  fraud (against all defendants); (9) violation of RICO, based on predicate crimes of embezzlement

23  and extortion (against all defendants except the County of Marin); (10) intentional infliction of

24  emotional distress (against all defendants except the County of Marin); and (11) loss of consortium

25  (against all defendants except the County of Marin). (*Id.* ¶¶ 97-230.)

26      On April 27, 2015, the defendants filed a motion to dismiss the Second Amended Complaint.

27  (Motion to Dismiss, ECF No. 45.) The plaintiff filed an opposition on May 26, 2015, and the

28  defendants filed a reply on May 29, 2015. (Opposition, ECF No. 59; Reply, ECF No. 60.)

UNITED STATES DISTRICT COURT<br>For the Northern District of California

## ANALYSIS

### I.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had

1    instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to

2    amend).

3    **II. DISCUSSION**

4    **A. Mr. Burroughs and Mr. Walsh Are Not Served Defendants**

5        As an initial matter, the court notes that the plaintiff listed former County of Marin finance

6    directors Greg Burroughs and Mark Walsh as defendants to his supervisory liability claim. (Second

7    Amended Complaint, ECF No. 4 at 29.) The plaintiff, however, did not list Mr. Burroughs and Mr.

8    Walsh as defendants in the caption of the Second Amended Complaint. (*Id.* at 1.) Moreover, the

9    plaintiff mentions Mr. Burroughs and Mr. Walsh in the Second Amended Complaint only to allege

10    that Mr. Given engaged in his conduct "behind their backs." (*Id.* ¶¶ 53, 144.) For this reason, the

11    court did not direct the defendants' counsel to decide whether to accept service on their behalf, and

12    the defendants' counsel thus did not do so. (*See* 5/12/2015 Order, ECF No. 52; 5/18/2015 Statement,

13    ECF No. 53.) This means that Mr. Burroughs and Mr. Walsh have not been served with the Second

14    Amended Complaint and thus are not "parties" to this action at this time. *Cf. Ornelas v. De Frantz*,

15    C 00-1067 JCS, 2000 WL 973684, at *2 n.2 (N.D. Cal. June 29, 2000) (unserved defendants are not

16    "parties" for consent purposes) (citing *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995)).

17    **B. The Defendants Have Not Shown that the Plaintiff's Claims Are Barred by California's**

18    **Claim Preclusion Doctrine**

19        A defendant may raise the affirmative defense of res judicata by way of a motion to dismiss

20    under Rule 12(b)(6). *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Under 28 U.S.C.

21    § 1738, federal courts are required to give full faith and credit to state court judgments. *San Remo*

22    *Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 (2005); *Brodheim v. Cry*, 584 F.3d

23    1262, 1268 (9th Cir. 2009). To determine the preclusive effect of a state court judgment, federal

24    courts look to state law. *Heinrichs v. Valley View Dev.*, 474 F.3d 609, 615 (9th Cir. 2007).

25        While the United States Supreme Court uses the term "res judicata" to refer collectively to claim

26    preclusion and issue preclusion, *see, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008), the

27    California Supreme Court generally uses the term "res judicata" to refer to claim preclusion, and the

28    term "collateral estoppel" to refer to issue preclusion, *see Boeken v. Philip Morris USA, Inc.*, 48 Cal.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

ORDER
No. 3:14-cv-03825 LB

4th 788, 797 (Cal. 2010) (distinguishing between the two "aspects" that compose California law's

preclusion doctrine). The California Supreme Court has explained it thusly:

> "As generally understood, '[t]he doctrine of res judicata gives certain conclusive
> effect to a former judgment in subsequent litigation involving the same controversy.'
> [Citation.] The doctrine 'has a double aspect.' [Citation.] 'In its primary aspect,'
> commonly known as claim preclusion, it 'operates as a bar to the maintenance of a
> second suit between the same parties on the same cause of action. [Citation.]'
> [Citation.] 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he
> prior judgment . . . "operates"' in 'a second suit . . . based on a different cause of
> action . . . "as an estoppel or conclusive adjudication as to such issues in the second
> action as were actually litigated and determined in the first action." [Citation.]'
> [Citation.] 'The prerequisite elements for applying the doctrine to either an entire
> cause of action or one or more issues are the same: (1) A claim or issue raised in the
> present action is identical to a claim or issue litigated in a prior proceeding; (2) the
> prior proceeding resulted in a final judgment on the merits; and (3) the party against
> whom the doctrine is being asserted was a party or in privity with a party to the prior
> proceeding. [Citations.]'" (*People v. Barragan* (2004) 32 Cal. 4th 236, 252–253, 9
> Cal. Rptr. 3d 76, 83 P.3d 480.)

*Boeken*, 48 Cal. 4th at 797.

Here, the defendants argue that California's claim-preclusion doctrine bars all of the plaintiff's

claims except his claim for loss of consortium. (Motion to Dismiss, ECF No. 45 at 12-15.) Two of

the three prerequisite elements are met: Mr. Kinney (the party against whom the claim preclusion

doctrine is being asserted) was a party to the Superior Court Action, and the Superior Court Action

resulted in a final judgment on the merits. Thus, the inquiry now focuses on whether the claims

raised in this action (with the exception of the plaintiff's claim for loss of consortium) are identical

to the claims litigated in the Superior Court Action.

"To determine whether two proceedings involve identical causes of action for purposes of claim

preclusion, California courts have 'consistently applied the "primary rights" theory.'" *Id.* (quoting

*Slater v. Blackwood*, 15 Cal.3d 791, 795 (Cal. 1975)). The California Supreme Court has explained

this theory as follows:

> Under this theory, "[a] cause of action . . . arises out of an antecedent primary right
> and corresponding duty and the delict or breach of such primary right and duty by the
> person on whom the duty rests. 'Of these elements, the primary right and duty and the
> delict or wrong combined constitute the cause of action in the legal sense of the term .
> . . .'" (*McKee v. Dodd* (1908) 152 Cal. 637, 641, 93 P. 854.)
>
> "In California the phrase 'cause of action' is often used indiscriminately . . . to
> mean counts which state [according to different legal theories] the same cause of
> action . . . ." (*Eichler Homes of San Mateo, Inc. v. Superior Court* (1961) 55 Cal. 2d

UNITED STATES DISTRICT COURT
For the Northern District of California

1  845, 847, 13 Cal. Rptr. 194, 361 P.2d 914.) But for purposes of applying the doctrine
2  of res judicata, the phrase "cause of action" has a more precise meaning: The cause of
   action is the right to obtain redress for a harm suffered, regardless of the specific
3  remedy sought or the legal theory (common law or statutory) advanced. (*See Bay
   Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal. 4th 854,
4  860, 21 Cal. Rptr.2d 691, 855 P.2d 1263.) As we explained in *Slater v. Blackwood*,
   *supra*, 15 Cal. 3d at page 795, 126 Cal. Rptr. 225, 543 P.2d 593: "[T]he 'cause of
5  action' is based upon the harm suffered, as opposed to the particular theory asserted
   by the litigant. [Citation.] Even where there are multiple legal theories upon which
6  recovery might be predicated, one injury gives rise to only one claim for relief.
   'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff
7  based on the same injury to the same right, even though he presents a different legal
   ground for relief.' [Citations.]" Thus, under the primary rights theory, the
8  determinative factor is the harm suffered. When two actions involving the same
   parties seek compensation for the same harm, they generally involve the same
9  primary right. (*Agarwal v. Johnson* (1979) 25 Cal. 3d 932, 954, 160 Cal. Rptr. 141,
   603 P.2d 58.)

10  *Id.* at 797-98.

11      In their motion, the defendants argue that the plaintiff seeks in this action "compensation for the

12  same harm" that was the basis for the Superior Court Action. (Motion to Dismiss, ECF No. 45 at

13  14.) The court disagrees. As the plaintiff made clear in the Second Amended Complaint, this action

14  concerns the defendants' actions with respect to Property #01. Those actions occurred since 2010.

15  The Superior Court Action, which was filed in 2011, concerned the defendants' actions with respect

16  to Property #28. Most of those actions occurred between 2002 and 2011. Even though the legal

17  claims that the plaintiff brings in this action are the same legal claims that he brought in the Superior

18  Court Action, he brings them with respect to different properties entirely.

19      Recognizing this, the defendants say that the plaintiff cannot simply "re-brand his claims as also

20  occurring" with respect to Property #01, but they cite no authority for this argument, and the court

21  has found none, either. (*See id.*) Although many of the facts the plaintiff alleged in his Second

22  Amended Complaint do concern the defendants' conduct with respect to Property #28, those

23  allegations are for context and do not form the basis for his legal claims. (*See* Second Amended

24  Complaint ¶ 25 (alleging, for example, that the defendants' past conduct with respect to Property

25  #28 shows a pattern of racketeering activity).) And while it is true that California's claim preclusion

26  doctrine bars "not only claims actually litigated in a prior proceeding, but also claims that could

27  have been litigated," *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364

28  (9th Cir. 1993) (citing *Busick v. Workmen's Comp. Appeals Bd.*, 7 Cal. 3d 967, 975 (Cal. 1972)),

1   that rule assumes that the same harm is at issue. Here it is not. As stated above, in this context and

2   based on the authority cited above, the alleged harm to Property #01, which has not been litigated, is

3   distinct from the alleged harm to Property #28, which has. Accordingly, the plaintiff's claims are not

4   barred by California's claim-preclusion doctrine.

5   **C. The Plaintiff Has Not Sufficiently Pleaded His Claims**

6          *1. Fourteenth Amendment Procedural Due Process*

7       The plaintiff brings his first claim under 28 U.S.C. § 1983 for violation of his Fourteenth

8   Amendment right to procedural due process. (Second Amended Complaint ¶¶ 97-105.) Essentially,

9   the plaintiff alleges in this claim that he paid the property taxes for Property #01 by money order and

10  that Mr. Given and Ms. Clark cashed those money orders, embezzled the money, and then labeled

11  Property #01 as "delinquent." (*Id.* ¶ 99(c)-(f).) He also alleges that he tried to resolve the matter

12  "dozens of times at all possible levels" and even filed an administrative claim, which the County of

13  Marin denied using "boilerplate" language. (*Id.* ¶¶ 21, 99(o).)

14      "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or

15  property interest protected by the Constitution; (2) a deprivation of the interest by the government;

16  (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). As the

17  defendants point out, the plaintiff has not shown what process he was due and how he was deprived

18  of it. He alleges that he filed an administrative claim and that the County of Marin denied the claim,

19  but he does not allege why the claim process was deficient. Simply alleging that the County of

20  Marin denied his claim using "boilerplate" language is not enough to state a claim to relief that is

21  plausible on its face. Accordingly, the court dismisses without prejudice the plaintiff's first claim for

22  violation of procedural due process.

23         *2. Fourteenth Amendment Equal Protection*

24      The plaintiff brings his second claim under 28 U.S.C. § 1983 for violation of his Fourteenth

25  Amendment right to equal protection of the laws. (Second Amended Complaint ¶¶ 106-116.) The

26  plaintiff alleges that he "was repeatedly single[d] out[ and] treated differently [from] the citizenry"

27  by Mr. Given and Ms. Clark. (*Id.* ¶ 109; *see also id.* ¶ 99(g); *but see id.* ¶ 99(g) (alleging that <u>both</u>

28  "[his and others' so situated funds[ and] property were repeatedly differently treated").) "[R]ather

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    than treating [the plaintiff], [his] funds, interests and property equally as the main body of the

2    Public, [Mr. Given, Ms. Clark and their team] repeatedly with hostility and violence abused [him],

3    injured [him], ruined [his] health, love, [and] life [when they] repeatedly embezzled [his]

4    property/funds[,] and extorted under their RICO Racket." (*Id.* ¶ 110.)

5          From these allegations, it appears that the plaintiff bring a so-called "class of one" equal-

6    protection claim. "The Supreme Court has recognized that 'an equal protection claim can in some

7    circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but

8    instead claims that she has been irrationally singled out as a so-called "class of one."'" *Gerhart v.*

9    *Lake County, Montana*, 637 F.3d 1013, 1021 (9th Cir. 2011) (quoting *Engquist v. Or. Dep't of*

10   *Agric.*, 553 U.S. 591, 601 (2008)). "To succeed on [a] 'class of one' claim, [a plaintiff] must

11   demonstrate that the [defendant]: (1) intentionally (2) treated [the plaintiff] differently than other

12   similarly situated [individuals], (3) without a rational basis." *Id.* at 1022 (citing *Village of*

13   *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478,

14   486 (9th Cir. 2008)). A plaintiff, however, need not show that the defendant was motivated by

15   subjective ill will. *Id.* (citing *Willowbrook*, 528 U.S. at 565).

16         The defendants correctly point out that the plaintiff has not alleged a sufficient factual basis

17   regarding how he was denied equal protection, how he was intentionally treated differently than

18   others similarly situated, or why the defendants' actions were not rational. (Motion to Dismiss, ECF

19   No. 45 at 17.) He says he was "singled out," but to the extent he is challenging the County of

20   Marin's tax collection processes, he does not allege how the County of Marin's attempts to tax his

21   real property and to assess penalties and interest for delinquent taxes are different than how it treats

22   others. To the extent that he contends he was treated differently because Mr. Given and Ms. Clark

23   do not embezzle and extort money from other citizens, his allegations are not enough to state a claim

24   to relief that is plausible on its face. Simply put, his allegations about Mr. Given's and Ms. Clark's

25   embezzlement and extortion are confusing. He alleges that they cashed his money orders but there

26   are no allegations that they used the money for personal use or did not deposit the money into the

27   account for his property taxes. Accordingly, the court dismisses without prejudice the plaintiff's

28   second claim for violation of his Fourteenth Amendment right to equal protection of the laws.

1

### 3. Municipal Liability

2      The plaintiff brings his third claim under 28 U.S.C. § 1983 for municipal liability under *Monell*

3  and based on a failure-to-train theory under *City of Canton*. (Second Amended Complaint ¶¶ 117-

4  126.)

5      Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official

6  policy or custom causes a constitutional tort. *See Monell*, 436 U.S. at 690. Nonetheless, a city or

7  county may not be held vicariously liable for the unconstitutional acts of its employees under the

8  theory of *respondeat superior*. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997);

9  *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To impose

10  municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1)

11  that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the

12  municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

13  constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.

14  *See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

15      Liability based on a municipal policy may be satisfied in one of three ways: (1) by alleging and

16  showing that a city or county employee committed the alleged constitutional violation under a

17  formal governmental policy or longstanding practice or custom that is the customary operating

18  procedure of the local government entity; (2) by establishing that the individual who committed the

19  constitutional tort was an official with final policymaking authority, and that the challenged action

20  itself was an act of official governmental policy which was the result of a deliberate choice made

21  from among various alternatives; or (3) by proving that an official with final policymaking authority

22  either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional

23  decision or action and the basis for it. *See Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d

24  1342, 1346-47 (9th Cir. 1992).

25      "In limited circumstances, a local government's decision not to train certain employees about

26  their legal duty to avoid violating citizens' rights may rise to the level of an official government

27  policy for purposes of § 1983." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011); *see also City of*

28  *Canton*, 489 U.S. at 388-92. "A municipality's culpability for a deprivation of rights is at its most

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808,

2    822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous,

3    and a good deal further removed from the constitutional violation, than was the policy in *Monell* ")).

4    "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must

5    amount to 'deliberate indifference to the rights of persons with whom the [untrained employees]

6    come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388). Only then "can such a

7    shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."

8    *City of Canton*, 489 U.S. at 389; *see Connick*, 131 S.Ct. at 1359-60.

9         "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor

10   disregarded a known or obvious consequence of his action." *Bd. of Comm'rs of Bryan Cnty. v.*

11   *Brown*, 520 U.S. 397, 410 (1997). "Thus, when city policymakers are on actual or constructive

12   notice that a particular omission in their training program causes city employees to violate citizens'

13   constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to

14   retain that program." *Connick*, 131 S.Ct. at 1360 (citing *Bryan Cnty.*, 520 U.S. at 407). "The city's

15   'policy of inaction' in light of notice that its program will cause constitutional violations 'is the

16   functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (quoting *City of*

17   *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). "A less stringent

18   standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on

19   municipalities . . . .'" *Id.* (quoting *City of Canton*, 489 U.S. at 392); *see also Pembaur v. Cincinnati*,

20   475 U.S. 469, 483 (1986) (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches

21   where—and only where—a deliberate choice to follow a course of action is made from among

22   various alternatives by [the relevant] officials . . . ."). Thus, "[a] pattern of similar constitutional

23   violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference

24   for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (quoting *Bryan County*, 520 U.S. at

25   409). "Policymakers' 'continued adherence to an approach that they know or should know has failed

26   to prevent tortious conduct by employees may establish the conscious disregard for the

27   consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'"

28   *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 407) (internal quotation marks omitted). "Without notice that a

1  course of training is deficient in a particular respect, decisionmakers can hardly be said to have

2  deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

3      The plaintiff's claim fails. First, it fails because he has not shown that he possessed a

4  constitutional right and that he was deprived of that right. As explained above, the plaintiff has not

5  alleged plausible procedural due process or equal protection claims, and those are the alleged

6  constitutional violations underlying his municipal liability claim. Second, the plaintiff does not

7  allege facts regarding the County of Marin's failure to train its employees. While previous Ninth

8  Circuit authority "require[d] plaintiffs in civil rights actions against local governments to set forth

9  no more than a bare allegation that government officials' conduct conformed to some unidentified

10  government policy or custom," the Ninth Circuit explicitly found that authority to be overruled post-

11  *Iqbal. See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (2012) (citations omitted).

12  Indeed, the new standard, which applies to all claims, including ones under *Monell*, is this:

> 13  "First, to be entitled to the presumption of truth, allegations in a complaint or
> counterclaim may not simply recite the elements of a cause of action, but must
> 14  contain sufficient allegations of underlying facts to give fair notice and to enable the
> opposing party to defend itself effectively.  Second, the factual allegations that are
> 15  taken as true must plausibly suggest an entitlement to relief, such that it is not unfair
> to require the opposing party to be subjected to the expense of discovery and
> 16  continued litigation."

17  *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). Using this new standard, the Ninth Circuit

18  in *County of Tulare* found the plaintiff's allegations "that Defendants 'maintained or permitted an

19  official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs'

20  that [the plaintiff] elsewhere alleged" because the plaintiff "did not put forth additional facts

21  regarding the specific nature of this alleged 'policy, custom or practice,' other than to state that it

22  related to 'the custody, care and protection of dependent minors. . . .'" *Id.* (footnote omitted). The

23  plaintiff's *Monell*-related allegations are similarly deficient. They are mere recitations of the basic

24  elements of a *Monell* claim, and they do not provide sufficient detail to suggest a plausible claim for

25  relief. Accordingly, the court dismisses without prejudice the plaintiff's third claim for municipal

26  liability under *Monell* and *City of Canton*.

27      **4. Supervisory Liability**

28      The plaintiff brings his fourth claim under 28 U.S.C. § 1983 for supervisory liability. (SAC ¶¶

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   129-144.) "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his

2   or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

3   between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d

4   1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). "A supervisor can be

5   liable in his individual capacity for his own culpable action or inaction in the training, supervision,

6   or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct

7   that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (quoting *Watkins v.*

8   *City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). To adequately plead such a claim,

9   "allegations in a complaint . . . may not simply recite the elements of a cause of action, but must

10  contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party

11  to defend itself effectively." *Id*. at 1216. These factual allegations "must plausibly suggest an

12  entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

13  expense of discovery and continued litigation." *Id*.

14      The plaintiff's claim fails because he has not shown an underlying constitutional violation. As

15  explained above, the plaintiff has not alleged plausible procedural due process or equal protection

16  claim, and those are the constitutional violations underlying his municipal liability claim. To the

17  extent that he alleges a different underlying constitutional violation, *see* Second Amended

18  Complaint ¶¶ 133 (alleging that the defendants "deprived the citizenry of their Constitutional

19  Rights" generally), his claim is insufficient. Accordingly, the court dismisses without prejudice the

20  plaintiff's fourth claim for supervisory liability.

21          *5. California Civil Code § 52.1*

22      The plaintiff's fifth claim is for violation of California's Bane Act, Cal. Civ. Code. § 52.1. (*Id.* ¶¶

23  145-157.) The Bane Act prohibits interference or attempted interference with a person's rights under

24  federal or California law by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a). The Bane

25  Act authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats,

26  intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or

27  state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (Cal. 1998). To obtain relief under this

28  statute, a plaintiff must prove that a defendant tried to, or did, prevent the plaintiff from doing

UNITED STATES DISTRICT COURT
For the Northern District of California

1    something that he had the right to do under the law, or to force plaintiff to do something that he was

2    not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860,

3    883 (Cal. Ct. App. 2007) (citing *Jones*, 17 Cal. 4th at 334).

4        It appears that the plaintiff's Bane Act allegations are based on the defendants' alleged

5    fraudulent extortion and embezzlement of his tax payments and their singling of him out for

6    different treatment.[4] As explained above, the plaintiff's allegations about Mr. Givens's and Ms.

7    Clark's embezzlement and extortion do not raise a plausible claim for relief, and the court has

8    dismissed as insufficient the plaintiff's procedural due process equal protection claims. His Bane

9    Act claim is premised on the same insufficient allegations. Accordingly, the court dismisses without

10   prejudice the plaintiff's fifth claim for violation of the Bane Act.

11       The defendants argue that the court should dismiss this claim with prejudice. They point out that,

12   to bring a Bane Act claim, the plaintiff must have first filed an administrative claim adequately

13   alleging the wrongs he alleges here. As one federal district court has explained:

> As a prerequisite for money damages litigation against a public entity, the California Tort Claims Act requires presentation of the claim to that entity. *See* Cal. Gov. Code § 945.4; *State of California v. Superior Court*, 32 Cal. 4th 1234, 1240-44, 13 Cal. Rptr.3d 534, 90 P.3d 116 (2004) ("*Bodde*"). Compliance with the Tort Claims Act is an element of a cause of action against a public entity. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *Bodde*, 32 Cal. 4th at 1240, 13 Cal. Rptr.3d 534, 90 P.3d 116. As such, "compliance with the claims statute is mandatory and failure to file a claim is fatal to the cause of action." *Hacienda La Puente Unified School Dist.*

---

[4] Federal district courts applying the Bane Act have reached different conclusions about the conduct necessary to support a claim. One line of cases has held that the coercive conduct must be separate from the alleged constitutional violation. *See Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 953 (E.D. Cal. 2011) (holding that "in order to maintain a claim under the Bane Act, the coercive force applied against a plaintiff must result in an interference with a separate constitutional or statutory right. It is not sufficient that the right interfered with is the right to be free of the force or threat of force that was applied."). Other courts have concluded that a Bane Act claim may be based on the same coercive conduct as a constitutional claim. *See Bass v. City of Fremont*, No. C12-4943 THE, 2013 WL 891090, at *5-6 (N.D. Cal. Mar. 8, 2013) (holding that the Bane Act applies where the underlying statutory or constitutional violation involved threats, intimidation, or coercion, without a separate showing of coercion). In the absence of binding authority, the court finds persuasive the line of cases permitting Bane Act claims based on the same conduct as an underlying constitutional violation. As discussed in *Bass*, this reading comports with the legislative history and the relatively broad statutory interpretation advanced in *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 823, 842 (2004). *See Bass*, 2013 WL 891090, at *5.

*v. Honig*, 976 F.2d 487, 494 (9th Cir. 1992); *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455, 115 Cal. Rptr. 797, 525 P.2d 701 (1974); *see also Bodde*, 32 Cal. 4th at 1240, 13 Cal. Rptr.3d 534, 90 P.3d 116. In federal court, the failure to allege facts that either demonstrate or excuse compliance with the California Tort Claims Act will subject a state law claim to dismissal. *See Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *cf. Bodde*, 32 Cal.4th at 1239, 13 Cal. Rptr. 3d 534, 90 P.3d 116.

*Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1152 (N.D. Cal. 2009).

The defendants argue that the plaintiff's administrative claim did not include the factual basis for his Bane Act claim, namely, that Mr. Given and Ms. Clark defrauded him by forcing him to enter into a fraudulent contract and thereafter extorting and embezzling money from him. The court disagrees. The plaintiff did mention extortion and embezzlement in his claim, and although he did not specifically mention that some acts in furtherance of the extortion and embezzlement occurred while he was in Nevada, that is good enough.

The defendants also argue that they are immune from liability under California Government Code § 860.2. That section provides immunity to public entities and public employees for injuries caused by "[i]nstituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax" or "[a]n act or omission in the interpretation or application of any law relating to a tax." The problem with addressing this now is that the plaintiff's allegations are still in flux. If the plaintiff can sufficiently allege a claim based on, say, extortion and embezzlement, then those acts would not be incidental to the assessment or collection of a tax. For now, though, the plaintiff simply has not alleged a plausible claim; the court thus defers ruling on this argument at this time. The defendants may raise it again in a subsequent motion to dismiss.

### 6. Theft of Honest Services, Abuse of Power, and Color of Law

The plaintiff's sixth claim is for "theft of honest services, abuse of power, and color of law." (Second Amended Complaint ¶¶ 158-166.) As the defendants note, there is no basis for these claims. The plaintiff's reference to "honest services" may be a reference to the federal criminal law's prohibition of using the mails and wires in furtherance of fraudulent deprivations of "the intangible right of honest services," *see* 18 U.S.C. §§ 1341, 1343, 1346, but a civil plaintiff has no right to bring a claim under this criminal statute. If one assumes that the plaintiff intends to assert it as a

1    predicate for a civil RICO claim, as discussed below, that claim fails too. And the plaintiff cites no

2    basis for his "abuse of power" or "color of law" claims either. Accordingly, the court dismisses with

3    prejudice the plaintiff's sixth claim for "theft of honest services, abuse of power, and color of law."

### 7. Fraud

5        The plaintiff's seventh claim is for fraud. (Second Amended Complaint ¶¶ 167-180.) It is based

6    on the "fraudulent contract" that Mr. Given and Ms. Clark "induced" him to enter into under threats

7    and duress. (*Id.* ¶ 167.) The plaintiff alleges that he entered into this contract on June 22, 2007. (*Id.*)

8        The defendants argue that, to bring this claim, the plaintiff needed to have filed an administrative

9    claim without six months of the accrual of the claim. This is true. As one court in this district has

10   explained:

> California Government Code Section 945.4 provides that "no suit for money or
> damages may be brought against a public entity on a cause of action for which a
> claim is required to be presented in accordance with . . . Section 910 . . . until a
> written claim therefore has been presented to the public entity and has been acted
> upon by the board, or has been deemed to have been rejected by the board. . . ."
> Section 910, in turn, requires that the claim state the "date, place, and other
> circumstances of the occurrence or transaction which gave rise to the claim asserted"
> and provide "[a] general description of the . . . injury, damage or loss incurred so far
> as it may be known at the time of presentation of the claim." A claimant has six
> months from the date of claim denial to file a lawsuit. Cal. Gov't Code § 945.6(a)(1);
> *see Castro v. Sacramento County. Fire Prot. Dist.*, 47 Cal. App. 4th 927, 929 (1996)
> (affirming trial court's dismissal of case filed 19 days after the 6–month limitations
> period, despite attorney error being the cause).

18   *Chan-Sosa v. Cal. Highway Patrol*, No. 15-cv-00008-SI, 2015 WL 2173720, at *2 (N.D. Cal. May

19   8, 2015). Here, the defendants say that the plaintiff's "fraudulent contract" claim accrued on the day

20   he entered into it—June 22, 2007. This means that he must have presented an administrative claim to

21   the County of Marin within six months later, but there is no indication that he did so. Accordingly,

22   the court dismisses with prejudice the plaintiff's seventh claim for fraud.

### 8. Civil RICO

24       The plaintiff's eighth and ninth claims are for violation of the civil RICO statute, 18 U.S.C. §

25   1964(c). (Second Amended Complaint ¶¶ 181-200.) The elements of a civil RICO claim are "(1)

26   conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate

27   acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de*

28   *Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks omitted); *see also* 18

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    U.S.C. §§ 1962(c), 1964(c).

2        Although the defendants make several argument, their argument that the plaintiff cannot allege a

3    "pattern" of racketeering activity is persuasive and sufficient on its own to warrant dismissal of the

4    plaintiff's claim.

5        To establish a pattern of racketeering activity, a plaintiff's allegations must show that
     the predicate acts are related ("relatedness requirement"), "and that they amount to or
6    pose a threat of continued criminal activity" ("continuity requirement"). *H.J., Inc. v.
     Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195
7    (1989) (emphasis in original).

8        A plaintiff may satisfy the continuity requirement by alleging either
     "closed-ended" or "open-ended" continuity. Closed-ended continuity involves "a
9    series of related predicates extending over a substantial period of time." *H.J.*, 492
     U.S. at 242; *see also Religious Technology Center v. Wollersheim*, 971 F.2d 364,
10   366-67 (9th Cir. 1992). Open-ended continuity involves "a specific threat of
     repetition extending indefinitely into the future," or predicate acts that "are part of an
11   ongoing entity's regular way of doing business." *H.J.*, 492 U.S. at 242; *Ticor Title
     Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991).

12
13       Where the predicate acts were designed to bring about a single event or injury to a
     single plaintiff, continuity is not sufficiently plead. *See, e.g., Medallion Television
14   Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987)
     (two predicate acts aimed at fraudulent inducement to enter a contract); *Religious
15   Technology Center*, 971 F.2d at 366 (only goal of defendants was successful
     prosecution of their state lawsuit); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535
16   (9th Cir. 1992) (defendants' acts served single purpose of impoverishing plaintiff).

17       In *Sever*, a single plaintiff brought suit against his former employers alleging that
     they had fired him, blacklisted him, and induced a subsequent employer to fire him
18   after he wrote articles criticizing the defendant former employers and testified before
     Congress to their economic detriment. The plaintiff's RICO claim alleged that the
19   defendants engaged in a pattern of racketeering activity that damaged his ability to
     obtain employment. The lower court dismissed the plaintiff's fourth amended
20   complaint for failure to state a RICO claim, in part because he had failed to allege a
     pattern of racketeering. *Id.* at 1533. The Ninth Circuit affirmed, holding, among other
21   things, that the allegations did not satisfy the continuity requirement set out in *H.J.*,
     noting that there was no suggestion that the defendants would have harmed any other
22   Congressional witnesses or that the alleged practices had become a regular way of
     conducting business. *Id.* In addition, the Court noted that "there was but a single
23   victim involved." *Id.* at 1535.

24   *Fotinos v. Fotinos*, No. C 12–953 CW, 2013 WL 1195644, at *7 (N.D. Cal. Mar. 22, 2013). There is

25   but a single victim involved here, too—the plaintiff. All of his allegations are that the defendants

26   have engaged in illegal activities to harm him and him alone. Indeed, this is why he brings an equal

27   protection claim. And as the only victim, the plaintiff as a matter of law cannot show that the

28   defendants engaged in a pattern of racketeering activity. Simply put, this is not a civil RICO case.

1    Accordingly, the court dismisses with prejudice the plaintiff's eighth and ninth claims for violation

2    of the civil RICO statute.

3                    *9. Intentional Infliction of Emotional Distress*

4        The plaintiff's tenth claim is for intentional infliction of emotional distress. (Second Amended

5    Complaint ¶¶ 201-220.) In California, "[a] cause of action for intentional infliction of emotional

6    distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention

7    of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

8    suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

9    emotional distress by the defendant's outrageous conduct." *Kelley v. Conco Companies*, 196 Cal.

10   App. 4th 191, 215 (2011). "A defendant's conduct is outrageous when it is so extreme as to exceed

11   all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

12       The plaintiff's claim fails. First, his claim is based on the conduct supporting his other claims,

13   but the court has dismissed those claims because his allegations do not support plausible claims for

14   relief. Second, even accepting his allegations to be true, the plaintiff cites nothing to show that the

15   conduct rises to the necessary level of outrageousness. In his opposition, the plaintiff points to his

16   allegations regarding the severity of his injuries, but this misses the point. The point is that he does

17   not provide authority showing that the defendants' conduct was extreme and outrageous.

18   Accordingly, the court dismisses with prejudice the plaintiff's tenth claim for intentional infliction

19   of emotional distress.

20                    *10. Loss of Consortium*

21       The plaintiff's eleventh claim is for loss of consortium. (Second Amended Complaint ¶¶ 221-

22   230.) A loss of consortium claim seeks "to compensate for the loss of [ ] companionship, affection

23   and sexual enjoyment of one's spouse, and it is clear that these can be lost as a result of

24   psychological or emotional injury as well as from actual physical harm." *Molien v. Kaiser Found.*

25   *Hosp.*, 27 Cal. 3d 916, 932 (1980). To state a claim for loss of consortium, a "marital spouse must

26   allege that their partner suffered an injury that is 'sufficiently serious and disabling to raise the

27   inference that the conjugal relationship is more than superficially or temporarily impaired.'" *Estate*

28   *of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1039 (9th Cir. 2008) (quoting

*UNITED STATES DISTRICT COURT*
*For the Northern District of California*

1   *Molien*, 27 Cal.3d at 932-33). While a physical injury may be more obvious, "a marital relationship

2   can be grievously injured when one spouse suffers a traumatically induced neurosis, psychosis,

3   chronic depression, or phobia." *Anderson v. Northrop Corp.*, 203 Cal. App. 3d 772, 780 (Cal. Ct.

4   App. 1988) (quoting *Molien*, 27 Cal. 3d at 933). A claim for loss of consortium does not stand on its

5   own, but is recognized as a "derivative of other injuries [ ] not an injury in and of itself." *Thomsen v.*

6   *Sacramento Metro. Fire Dist.*, No. 2:09-CV-01108 FCD, 2009 WL 8741960, at *13 (E.D. Cal. Oct.

7   20, 2009) (internal citation and quotations omitted).

8       The plaintiff's claim fails because he alleges that he is the injured party and he also is the party

9   bringing the claim. He is not the marital spouse whose partner suffered an injury. His wife is the

10  marital spouse, and he is the partner who suffered an injury. Accordingly, the court dismisses with

11  prejudice the plaintiff's eleventh claim for loss of consortium.

## CONCLUSION

13      Accordingly, the court grants the defendant's motion. The plaintiff's first, second, third, fourth,

14  and fifth claims are dismissed without prejudice, and his sixth, seventh, eighth, ninth, tenth, and

15  eleventh claims are dismissed with prejudice. In light of the plaintiff's notice of unavailability, the

16  plaintiff may file a third amended complaint by August 7, 2015.

17      This order resolves ECF No. 45.

18      **IT IS SO ORDERED.**

19  Dated: June 9, 2015      _____

20                           LAUREL BEELER
                             United States Magistrate Judge